Frank S. Hedin (SBN 291289)
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Telephone: + 1 (305) 357-2107
Facsimile: + 1 (305) 200-8801
Email: fhedin@hedinhall.com

David W. Hall (SBN 274921)
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: + 1 (415) 766-3534
Facsimile: + 1 (415) 402-0058
Email: dhall@hedinhall.com

*Counsel for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA E. LISH, *on behalf of herself and all others similarly situated*,<br><br>     Plaintiff,<br><br>v.<br><br>AMERIHOME MORTGAGE COMPANY, LLC,<br><br>    Defendant. | Case No.  20-cv-7147<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u><br><br>ACTION FOR VIOLATIONS OF:<br><br>1. ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE §§ 1788 *ET SEQ*.;<br>2. UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ*.;<br>3. FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72; and<br>4. FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT § 501.203 |

Plaintiff Sandra E. Lish ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant AmeriHome Mortgage Company, LLC ("AmeriHome" or "Defendant"). In support, Plaintiff alleges the following based upon information and belief, the investigation of counsel, and personal knowledge as to the factual allegations pertaining to herself:

## **NATURE OF THE ACTION**

1.     Defendant AmeriHome is a privately held mortgage loan servicing company founded in 2013.

2.     Upon information and belief, AmeriHome has a $23 billion portfolio of mortgage servicing rights.[1]

3.     AmeriHome is not content making money off the interest homeowners pay on their mortgage loans. Instead, it knowingly and deliberately squeezes unlawful fees out of the homeowners whose loans it is servicing by charging and collecting illegal payment processing fees when borrowers make their monthly mortgage payments by telephone (the "Pay-to-Pay Fees").  Upon information and belief, AmeriHome charges these Pay-to-Pay Fees to each and every consumer who makes his or her mortgage payment via telephone.

4.     Specifically, AmeriHome charges a Pay-to-Pay Fee of up to $2 when borrowers make payments over the phone, which is far more than AmeriHome's actual cost to process the transaction. But AmeriHome is prohibited from making money off of consumers by imposing and collecting additional "service" fees that do not reflect the cost to AmeriHome of providing such services.

---

[1]     *See* https://asreport.americanbanker.com/news/amerihome-tapping-securitization-market-to-fund-ginnie-mae-msrs (last visited June 5, 2020).

5.    Indeed, AmeriHome cannot legally impose unauthorized charges which are not explicitly contained in the mortgage agreement and Pay-to-Pay Fees are not permitted by Plaintiff's and the Class Members' the mortgage agreements.

6.    Nonetheless, AmeriHome uses its position of power over homeowners to charge unreasonable Pay-to-Pay Fees. Upon investigation and belief, the actual cost for AmeriHome to process online mortgage payment transactions is much less than the Pay-to-Pay Fees that AmeriHome charges mortgagers.  AmeriHome takes that money for themselves as pure profit.

7.    In charging and collecting these Pay-to-Pay Fees, AmeriHome routinely violates state and federal debt collection law and breaches the uniform terms of borrowers' mortgages (the "Uniform Mortgages").

8.    Plaintiff Sandra E. Lish was charged and paid AmeriHome's illegal Pay-to-Pay Fees when she made her mortgage payments via telephone, and brings this class action to stop AmeriHome from continuing to charge these unlawful fees.

## **JURISDICTION AND VENUE**

9.    This Court has jurisdiction over AmeriHome because its principal place of business is 1 Baxter Way Suite 300, Thousand Oaks, CA 91362, and AmeriHome does business in California, and performed the wrongful acts giving rise to this lawsuit in California.

10.    Venue is proper in this District because AmeriHome does business in and maintains its principal place of business in this Distict, and the causes of action asserted herein arose in this District.

11.    Subject matter jurisdiction exists under the Class Action Fairness Act because diversity exists between the defendant and at least one class member and the amount in controversy exceeds $5,000,000.

**PARTIES**

12.     Plaintiff Sandra E. Lish is a natural person residing in and a citizen of Florida, who has a mortgage loan serviced by AmeriHome on her home located in Miami, Florida.

13.     Defendant AmeriHome Mortgage Company, LLC is a Delaware limited liability company with its principal place of business in Thousand Oaks, Ventura County, California.

**APPLICABLE LAW**

*THE ROSENTHAL ACT*

14.     The Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") is a remedial statute [that] should be interpreted broadly in order to effectuate its purpose. *See Komarova v. National Credit Acceptance, Inc.*, 175 Cal.App.4th 324, 95 Cal.Rptr.3d 880 (2009).

15.     The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).

16.     The Rosenthal Act defines a "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(f).

17.     The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(e).

18.     The Rosenthal Act prohibits "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14(b).

19.     The Rosenthal Act also makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

20.     The Rosenthal Act makes it illegal for any entity covered by it to violate the federal Fair Debt and Collection Practices Act ("FDCPA"). Cal. Civ. Code § 1788.17.

## THE CALIFORNIA UNFAIR COMPETITION LAW

21.     The California Unfair Competition Law ("UCL") defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

22.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

23.     In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

## FLORIDA CONSUMER COLLECTION PRACTICES ACT

24.     The Florida Consumer Collection Practices Act ("FCCPA") prohibits debt collectors from engaging in certain abusive practices in the collection of consumer debts. *See generally* Fla. Stat. § 559.72.

25.     The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

26.     Specifically, the FCCPA states that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

27.     The FCCPA creates a private right of action under Fla. Stat. § 559.77.

28.     The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." Fla. Stat. § 559.55(8).

29.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. Id. § 559.72. This language includes all allegedly unlawful attempts at collecting consumer claims. *Williams v. Streeps Music Co.*, 333 So.2d 65, 67 (Fla. Dist. Ct. App. 1976).

30.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. § 559.55(6).

## *FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT*

31.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "construed liberally to promote" the protection of consumers and businesses from "unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

32.     The FDUTPA creates a private right of action for FDUTPA violations. Fla. Stat. § 501.211.

33.     The FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, or unfair or deceptive acts or practices in the conduct of any trade or commerce" against consumers. Fla. Stat. § 501.204(1).

34.     The FDUTPA defines "consumer" broadly as an individual, entity, or any group or combination. Fla. Stat. § 501.203(7).

35.     The FDUTPA defines "trade or commerce" as "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8).

36.     Where there is a violation of a statute prohibiting unfair or deceptive acts, a *per se* violation of Florida's FDUTPA has also occurred. *See* Fla. Stat. § 501.203(3) (stating a violation of any law proscribing unfair methods of competition, or unfair, deceptive, or unconscionable acts is also a violation the FDUTPA); *Blair v. Wachovia Mortg. Corp.*, No. 11–cv–566–Oc–37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) ("[A] per se violation of FDUTPA stems from the transgression of any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.").

## FACTUAL ALLEGATIONS

### The Mortgage Servicing Industry

37.     Mortgage lenders rarely service their own loans. In many cases, lenders specialize in the origination of the loan, but they are not equipped to handle the day-to-day administrative tasks that come with a mortgage. Instead of managing these duties in-house, they assign the servicing rights of their loans to a designated servicer—a company that specializes in the actual management and administration of mortgages.

38.     A mortgage servicer is a company that, in turn, handles the day-to-day administrative tasks of a mortgage loan, including receiving payments, sending monthly statements, and managing escrow accounts.

39.     AmeriHome is a loan servicer that operates around the country, including in Los Angeles county.

40.     Each time a mortgage borrower whose loan is serviced by AmeriHome makes a payment over the phone ("Pay-to-Pay Transaction"), AmeriHome charges the borrower a Pay-to-Pay Fee of at least $2 when borrowers make payments over the phone.

41.     Based on information and belief, the usual cost that a servicer like AmeriHome pays to process Pay-to-Pay Transactions is $.50 or less per transaction.

42.     Thus, the actual cost to AmeriHome to process the Pay-to-Pay Transactions is well below the amounts charged to borrowers, and AmeriHome pockets the difference as profit.

43.     The Uniform Mortgages of AmeriHome's customers do not authorize AmeriHome to charge Pay-to-Pay Fees. In fact, the Pay-to-Pay Fees constitute a breach of borrowers' mortgages.

### Facts of Named Plaintiff

44.     On or around November 26, 2018, Plaintiff purchased a home in Miami, Florida, through a loan from All Western Mortgage, Inc., secured by a mortgage on the property (the "Mortgage Agreement"). The Mortgage Agreement is attached as **Exhibit A.**

45.     Plaintiff took out the mortgage loan secured by her property for personal, family, or household uses.

46.     At some point, AmeriHome was assigned the servicing rights to the loan.

47.     As servicer, AmeriHome has the right to collect payments and to perform services for the borrower on behalf of the lender.

48.     The Mortgage Agreement provides that the loan servicer possesses a "partial interest in" the Note, which may be transferred. Ex. A at ¶ 20.

49.     The Mortgage Agreement further provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in section 20) and benefit the successors and assigns of Lender." Ex. A at ¶ 13.[2]

---

[2] Section 20 provides: "The note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects periodic payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There might also be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change under the Loan Servicer, Borrower will be given written notice of the change . . . . If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to

50.     AmeriHome thus became bound as an assignee to the Mortgage Agreement at the time it acquired the servicing rights for Plaintiff's loan.

51.     Plaintiff's mortgage payments are due on the 1st of the month each and every month, and AmeriHome will assess a late charge if payments are not received during a 15-day grace period.

52.     Each time Plaintiff makes a mortgage payment over the phone, AmeriHome charges her a Pay-to-Pay Fee.

53.     For example, on November 15, 2019, December 16, 2019, January 14, 2020, and February 14, 2020, AmeriHome charged Plaintiff a $2.00 Pay-to-Pay Fee for making a payment over the phone.

54.     When Plaintiff made her monthly mortgage payments, she made such payments after the first day of each month and after the due date for such payments.

55.     AmeriHome knowingly and deliberately collects the Pay-to-Pay Fees even though it is aware that such fees are not authorized under the Mortgage Agreement and that it therefore has no right to collect them.

56.     Prior to filing this Complaint, Plaintiff made written pre-suit demands upon AmeriHome.

57.     AmeriHome was given a reasonable opportunity to cure the breaches complained of herein but has failed to do so.

***Facts Common to the Class***

58.     Like Plaintiff's AmeriHome Mortgage Agreement, the Mortgage Agreements of the Class Members incorporates standard language from Fannie Mae model mortgages. And like other Fannie Mae mortgages, the Mortgage Agreement states that the servicer "may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law." Ex. A at ¶ 14.

---

a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." Ex. A at ¶ 20.

59.     "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2, ¶ (J).

60.     By collecting Pay-to-Pay Fees in violation of "Applicable Law, "including the FDCPA, AmeriHome breached the uniform covenants of the Mortgage Agreement. *See* Fla. Stat. § 559.72(9) (prohibiting collection, or attempts at collection, of debts known not to exist and prohibiting the assertion of a legal right known not to exist); *cf. Prescott v. Seterus Inc.*, No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015) (holding that charging certain fees  not agreed to in the mortgage agreement violated the FCCP A and FDCP A); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 610 (11th Cir. 2014) (holding that certain fees violate the FDCPA where they are not supported by the language of the consumer agreement underlying the debt at issue); Fla. Stat.§ 559.77(5) ("In applying and construing [the FCCPA], due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.") ( emphasis added).

61.     Charging Pay-to-Pay Fees not authorized by the Mortgage Agreement also violates the Rosenthal Act, *i.e.*, California law. *See* Cal. Civ. Code §§ 1788.13(e), 1788.14(b), and 1788.17.

62.     AmeriHome's demand for payment of Pay-to-Pay Fees was and is a direct breach of Paragraph 9 of the Mortgage Agreement, which states that only "amounts *disbursed* by Lender under this Section 9 shall become an additional debt of Borrower secured by this Security Instrument." *See* Ex. A ¶ 9 (emphasis added).

63.     AmeriHome collected more than the amount it disbursed to process the Pay-to-Pay Transactions.

64.     The above paragraphs are contained in the Uniform Covenants section of the Mortgage Agreement. AmeriHome thus breached its contracts on a class-wide basis.

## CLASS ACTION ALLEGATIONS

65.     Plaintiff brings this action on behalf of the following classes of persons, subject to modification after discovery and case development:

> **Nationwide Class:** All persons (1) with a residential mortgage loan securing a property, (2) serviced or subserviced by AmeriHome, (3) who paid a fee to AmeriHome for making a loan payment by telephone during the applicable statutes of limitations through the date a class is certified.

> **Florida Sub-class:** All persons (1) with a residential mortgage loan securing a property in Florida, (2) serviced or subserviced by AmeriHome, (3) and who paid a fee to AmeriHome for making a loan payment by telephone during the applicable statutes of limitations through the date a class is certified.

66.     The Nationwide Class and the Florida Sub-class will be referred to collectively as the "Class."

67.     Class members are identifiable through Defendant's records and payment databases.

68.     Excluded from the class are the Defendant; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

69.     Plaintiff proposes that she serve as class representative, as she has suffered the harms complained of herein.

70.     Plaintiff and the Class have all been harmed by the actions of Defendant.

71.     Numerosity is satisfied. There are at least thousands of class members given the size of AmeriHome's portfolio and nationwide operations. Individual joinder of these persons is impracticable.

72.     There are questions of law and fact common to Plaintiff and to the Class, including, but not limited to:

a.      Whether AmeriHome assessed Pay-to-Pay Fees on Class members;

b.      Whether AmeriHome was authorized to charge and collect Pay-to-Pay Fees under the Mortgage Agreement;

c.      Whether AmeriHome's assessment and collection of Pay-to-Pay Fees violated applicable laws;

d.      Whether AmeriHome's cost to process Pay-to-Pay Transactions is less than the amount that it charged for Pay-to-Pay Fees;

e.      Whether Plaintiff and the Class were damaged by AmeriHome's conduct;

f.      Whether Plaintiff and the Class are entitled to injunctive relief to enjoin AmeriHome from further engaging in these wrongful practices; and

g.      Whether Plaintiff and the Class are entitled to attorney's fees and costs.

73.     Plaintiff's claims are typical of the claims of the Class members. AmeriHome charged her Pay-to-Pay Fees in the same manner as the rest of the Class members. Plaintiff and the Class members entered into uniform covenants in their Mortgage Agreements that prohibit Pay-to-Pay charges or, at most, cap the amount of Pay-to-Pay Fees allowed to be charged at the actual amount disbursed by AmeriHome to process Pay-to-Pay Transactions.

74.     Plaintiff is an adequate class representative because her interests do not conflict with the interests of the class members and she will adequately and fairly protect

the interests of the class members. Plaintiff has taken actions before filing this amended complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of class members to protect the interests of the class.

75. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

76. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

## COUNT I

### Violation of the Rosenthal Fair Debt Collection Practices Act

### Cal. Civ. Code §§ 1788 *et seq.* (Rosenthal Act)

### (On behalf of Plaintiff and the Nationwide Class)

77. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78. The Rosenthal Act applies because AmeriHome regularly engages in debt collection as defined by the statute. Cal. Civ. Code § 1788.2.

79. AmeriHome knew that the Pay-to-Pay Fees were not expressly authorized by the Mortgage Agreement or the mortgage agreements of the other Class Members, yet it collected them anyway.

80. The Rosenthal Act makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

81. By assessing Pay-to-Pay Fees, AmeriHome represented that the mortgage loan debts of Plaintiff and the Class Members may be increased by the addition of the Pay-to-Pay Fees, even though Pay-to-Pay Fees may not be legally added to the existing obligation.

82. This conduct violates the Rosenthal Act.

83.     The Rosenthal Act also prohibits "collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14.

84.     When AmeriHome collected Pay-to-Pay Fees from Plaintiff and the Class Members, it collected (or attempted to collect) fees or charges for services rendered that were not permitted by law. This conduct violated the Rosenthal Act.

85.     Additionally, by charging Pay-to-Pay Fees, at least a portion of which it retains, AmeriHome acted in violation of the federal Fair Debt Collection Practices Act, which prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

86.     The Rosenthal Act makes it illegal for any entity covered by the Rosenthal Act to violate the federal FDCPA. Cal. Civ. Code § 1788.17. By violating the federal FDCPA, AmeriHome violated the Rosenthal Act.

87.     Plaintiff and the Class Members were harmed when AmeriHome violated the Rosenthal Act through the above-described conduct.

88.     As a result of each and every violation of the Rosenthal Act, Plaintiff and the Class Members are entitled to, among other forms of relief deemed appropriate by the court, reasonable attorneys' fees and costs under Cal. Civ. Code § 1788.30(c).

# COUNT II

## Violation of California's Unfair Competition Law

## Cal. Bus. & Prof. Code § 17200, *et seq.*

## (On behalf of Plaintiff and the Nationwide Class)

89.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

90.     The California Unfair Competition Law defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

### *The Unlawful Prong*

91.     AmeriHome's conduct is unlawful under the UCL because it violates the Rosenthal Act and the FDCPA.

92.     As a result of the above conduct, Plaintiff and the Class Members have suffered economic injury, and AmeriHome has been unjustly enriched at their expense. AmeriHome has been unjustly enriched by obtaining revenues and profits that it would not have obtained otherwise absent its unlawful conduct.

93.     Through its unlawful acts and practices, AmeriHome has improperly obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that the Court enjoin AmeriHome from continuing to violate the Rosenthal Act, FDCPA, and UCL. Plaintiff's mortgage continues to be serviced by AmeriHome, and they intend to make mortgage payments over the phone in the future. Absent an injunction, Plaintiff and the Class Members may be irreparably harmed and/or denied an effective and complete remedy.

### *The Unfair Prong*

94.     In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

95.     AmeriHome's actions constitute "unfair" business practices because, as alleged above, AmeriHome engaged in the immoral, unethical, oppressive, and unscrupulous practice of charging Pay-to-Pay Fees not authorized by the Uniform Mortgages or applicable law. AmeriHome's unfair practice was substantially injurious to consumers, who were forced to pay $2 each time they wished to make payments by phone. Because AmeriHome charged fees well above the actual cost of providing phone payment services, there are no countervailing benefits to consumers or competition that outweigh the injuries suffered by Plaintiff and the Class.

96.     As a result of the above conduct, Plaintiff has suffered economic injury, and AmeriHome has been unjustly enriched at the expense of Plaintiff and members of the Class. AmeriHome has been unjustly enriched by obtaining revenues and profits that it would not have obtained otherwise absent its unlawful conduct.

97.     Through its unlawful acts and practices, AmeriHome has improperly obtained money from Plaintiff and the Class Members. As such, Plaintiff requests that the Court enjoin AmeriHome from continuing to violate the UCL in the future. Plaintiff's mortgage continues to be serviced by AmeriHome, and they intend to make mortgage payments over the phone in the future. Absent an injunction, Plaintiff and the Class Members may be irreparably harmed and/or denied an effective and complete remedy.

## COUNT III

**Violation of Florida's Consumer Protection Practices Act**

**Fla. Stat. § 555.72(9)**

**(On Behalf of Plaintiff and the Florida Sub-class)**

98.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

99.     Plaintiff and the Florida Class Members are "consumers" as defined by Fla. Stat. § 559.55(8).

100.   Defendant is a "person" as stated in the FCCPA.

101.   Plaintiff and the Florida Class Members purchased their homes by residential mortgage for personal, family or household use.

102.   Defendant attempted to enforce, claimed, and asserted a known non-existent legal right to a debt as defined by Fla. Stat. § 559.55(6) when it charged, attempted to collect, and collected Pay-to-Pay Fees. *Id*. § 559.72(9).

103.   Defendant's acts of illegally attempting to collect a debt from Plaintiff and the Florida Class Members and deliberately charging monthly Pay-to-Pay Fees constitutes a knowing violation of § 559.72(9) of the FCCPA.

104.   As a result of Defendant's FCCPA violations, Plaintiff and the Florida Class Members suffered substantial damages, including but not limited to financial damage incurred from Defendant's illegal Pay-to-Pay Fees.

## COUNT IV
### Violation of Florida's Deceptive and Unfair Practices Act
### Fla. Stat. §§ 501.203(3), 501.204
### (On Behalf of Plaintiff and the Florida Sub-class)

105.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

106.   Plaintiff and the Florida Class Members are "consumers" as defined by Fla. Stat. § 501.203(7).

107.   Defendant engaged in "trade or commerce" as defined by § 501.203(8) when it attempted to collect, and collected, a debt associated with mortgage payments.

108.   Defendant violated § 559.72(9) of the FCCPA when it attempted to collect, and collected, a debt associated with mortgage payments.

109.   A violation of Fla. Stat. § 559.72(9) of the FCCPA is a per se violation of FDUTPA under Fla. Stat. § 501.203(3).

110.   In addition to the above-referenced per se FDUTPA violations, Defendant also generally violated FDUTPA under Fla. Stat. § 501.204(1) when it engaged in unfair and deceptive practices in trade or commerce by taking advantage of consumers in claiming and collecting debts for amounts not owed.

111.   Defendant never informed Plaintiff and the Florida Class Members when they made their Pay-to-Pay Fee payments that the actual cost to Defendant for the Pay-to-Pay Transactions was far less than the amount charged in Pay-to-Pay Fees.

112.   As a result of Defendant's FDUTPA violations, Plaintiff and the Florida Class Members suffered substantial damage, including but not limited to financial damage incurred from Defendant's unlawful Pay-to-Pay Fees.

## COUNT V

### Breach of Contract

### (On Behalf of Plaintiff, the Nationwide Class, and the Florida Sub-Class)

113.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

114.    Plaintiff and the Class Members entered into contracts with AmeriHome. AmeriHome breached its contracts with Plaintiff and the Class Members when it charged Pay-to-Pay Fees not agreed to in their mortgage agreements, specifically prohibited by their mortgage agreements, and in excess of the amounts actually disbursed by AmeriHome to pay for the cost of Pay-to-Pay Transactions.

115.    Plaintiff purchased a home subject to the Mortgage Agreement. *See* Ex. A.

116.    At some point, AmeriHome was assigned the servicing rights to the loan. As servicer, AmeriHome has the right to collect payments and perform services for the borrower on behalf of the lender. The Mortgage Agreement provides that the loan servicer possesses a "partial interest in" the Note, which may be transferred. *See* Ex. A ¶ 20.

117.    The Mortgage Agreement further provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in section 20) and benefit the successors and assigns of Lender." Ex. A ¶ 13. AmeriHome thus became bound as an assignee to the Mortgage Agreement at the time it acquired the servicing rights to the subject mortgage loan.

118.    Each time Plaintiff makes mortgage payments over the phone, AmeriHome charges her a Pay-to-Pay Fee. For example, on November 15, 2019, December 16, 2019, January 14, 2020, and February 14, 2020, AmeriHome charged Plaintiff a $2.00 Pay-to-Pay Fee for making a payment over the phone.

119.    These fees were not authorized by the Mortgage Agreement.

120.    Like other borrowers whose mortgages are serviced by AmeriHome, Plaintiff's Mortgage Agreement incorporates standard language from Fannie Mae model

mortgages. And like other Fannie Mae mortgages, the Mortgage Agreement states that the servicer "may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law." Ex. A ¶ 14.

121. The Mortgage Agreement states that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located," i.e., Florida. Ex. A ¶ 16. It further states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id*. ¶ 14.

122. "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2 ¶ (J).

123. The Mortgage Agreement further states that it is "governed by federal law and the law of the jurisdiction in which the Property is located," *i.e*., Florida. Ex. A ¶ 16.

124. By collecting Pay-to-Pay Fees in violation of "Applicable Law," *i.e*., the FCCPA, AmeriHome breached the uniform covenants of the Mortgage Agreement. *See* Fla. Stat. § 559.72(9) (prohibiting collection, or attempts at collection, of debts known not to exist and prohibiting the assertion of a legal right known not to exist); *cf. Prescott v. Seterus Inc.*, No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015) (holding that charging certain fees not agreed to in the mortgage agreement violated the FCCP A and FDCP A); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 610 (11th Cir. 2014) (holding that certain fees violate the FDCPA where they are not supported by the language of the consumer agreement underlying the debt at issue); Fla. Stat.§ 559.77(5) ("In applying and construing [the FCCPA], due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.") ( emphasis added).

125.    Charging Pay-to-Pay Fees not authorized by the Mortgage Agreement also violated the Rosenthal Act, *i.e.*, California law. *See* Cal. Civ. Code §§ 1788.13(e), 1788.14(b), 1788.17.

126.    Alternatively, by assessing more than the amounts it actually disbursed to the balance of Plaintiff's mortgage, AmeriHome violated Paragraph 9 of the Mortgage Agreement.

127.    Because the above provisions are contained in the "Uniform Covenants" section of the Mortgage Agreement, AmeriHome has breached their contracts on a class-wide basis.

128.    Plaintiff and the Class Members were damaged by AmeriHome's breach.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and others similarly situated, respectfully requests that the Court:

- Certify the proposed Class;

- Permanently enjoin AmeriHome from the wrongful and unlawful conduct alleged herein;

- Award Plaintiff and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

- Award pre- and post-judgment interest to the extent provided by law and

- Award such further relief as the Court deems appropriate.

## **PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

Dated: August 9, 2020

Respectfully submitted,

**HEDIN HALL LLP**

By: */s/ Frank S. Hedin*
　　 Frank S. Hedin

Frank S. Hedin (SBN 291289)
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Telephone: + 1 (305) 357-2107
Facsimile: + 1 (305) 200-8801
Email: fhedin@hedinhall.com

David W. Hall (SBN 274921)
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: + 1 (415) 766-3534
Facsimile: + 1 (415) 402-0058
Email: dhall@hedinhall.com

*Counsel for Plaintiff & the Class*