Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104

NOTE: CHANGES MADE BY THE COURT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA E. LISH, <br><br> Plaintiff, <br><br> vs. <br><br> AMERIHOME MORTGAGE COMPANY, LLC, <br><br> Defendant. | CASE NO.: 2:20-cv-07147-JFW-JPRx <br><br> **STATEMENT OF DECISION ON DEFENDANT AMERIHOME MORTGAGE COMPANY, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 9, 2020, Plaintiff Sandra E. Lish ("Lish") filed a Complaint against Defendant AmeriHome Mortgage Company, LLC ("Defendant"). On September 29, 2020, Plaintiff filed a First Amended Complaint ("FAC"), alleging claims for: (1) Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788, *et seq.* ("Rosenthal Act"); (2) Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ("UCL"); (3) Florida Consumer Collection Practices Act § 559.72 ("FCCPA"); and (4) Florida Deceptive and Unfair Trade Practices Act § 501.203 ("FDUTPA"). In her FAC, Plaintiff alleges that Defendant charged her a $2.00 convenience fee each time she chose to make a mortgage payment by telephone. Plaintiff also alleges that Defendant knowingly and deliberately charged the convenience fee even though it is aware that such a fee is not authorized under her Mortgage Agreement.[1]

## II. LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

---

[1] On November 26, 2018, Plaintiff purchased a home in Miami, Florida, through a loan from All Western Mortgage, Inc., secured by a mortgage on the property ("Mortgage Agreement"). Defendant was assigned the servicing rights to the loan.

do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III. DISCUSSION

### A. Plaintiff Cannot State Claims for Violation of the Rosenthal Act and the UCL Because Plaintiff is Not a Resident of California and Was Not Harmed in California.

In her first and second counts, Plaintiff alleges violations of the Rosenthal Act and the UCL, respectively. The Rosenthal Act and the UCL are California statutes that regulate harm suffered by California residents, or harm to non-residents that occurred in California. These statutes were neither designed nor intended to provide relief to non-California residents allegedly harmed by conduct occurring entirely outside of California. *Norwest Mortg., Inc. v. Superior Court,* 72 Cal. App. 4th 214, 222 (1999) ("We ordinarily presume the Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state").

In this case, Plaintiff is not a resident of California and the subject mortgage is for a property located in Miami, Florida. FAC, ¶ 12. Thus, in order for a non-resident such as Plaintiff, to invoke a California statute, she must allege that there is a "significant contact or significant aggregation of contacts" linking her injuries or the defendant's alleged misconduct to the State of California. *Id.* at 226. However, the FAC fails to allege that Plaintiff, a Florida resident, was harmed in California. Instead, Plaintiff merely alleges in conclusory fashion that Defendant's convenience fees "occur in and emanate from California." FAC, ¶ 43. In addition, Plaintiff's only allegations in support of this conclusion are that, *upon information and belief*, Defendant and its executives somehow implemented the convenience fees from California, that Defendant issued all disclosures concerning the charging of convenience fees from California, that Defendant uses computer systems and other-payment processing technology operated and controlled in California, and the convenience fees are "paid by borrowers in bank accounts that it maintains at financial institutions located in California." FAC, ¶¶ 41-42. However, these sorts of conclusory allegations based on information and belief are completely insufficient to

Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104

state a cause of action. *See, Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 570. In addition, Plaintiff's allegations that Defendant conducts business in California, without more, are not sufficient to permit application of foreign law to the claims of non-resident plaintiffs. *See, e.g., Norwest,* 72 Cal.App.4th at 226 ("The fact that Norwest Mortgage is incorporated and does business in California gives California personal jurisdiction over Norwest Mortgage. However, *Shutts* specifically admonished that the existence of personal jurisdiction over the defendant does not alone permit application of the forum law to the claims of nonresident plaintiffs") (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)).

Accordingly, because the Rosenthal Act and the UCL do not apply to non-residents and Plaintiff's FAC fails to allege any injury in California, Plaintiff's first and second counts are dismissed.

### B. Plaintiff Failed to State a Claim for Violation of the Rosenthal Act.

Even assuming *arguendo* that Plaintiff was entitled to assert a Rosenthal Act claim against Defendant despite Plaintiff not being a resident of California, Plaintiff's first count for violation of the Rosenthal Act is also subject to dismissal under Rule 12(b)(6) because it fails to state a cause of action.

Plaintiff's first count alleges that the convenience fees she chose to pay in order to use Defendant's optional telephonic payment service violate the Rosenthal Act. FAC., ¶¶ 82-95. The Rosenthal Act was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." It was enacted in 1977, the same year that its federal counterpart, the Fair Debt Collection Practices Act ("FDCPA"), was enacted. In addition to its other requirements and prohibitions, the Rosenthal Act requires debt collectors to comply with the provisions of the FDCPA. *See, Davidson v. Seterus, Inc.* (2018) 21 Cal.App.5th 283, 295. Thus, Plaintiff must allege a violation of the FDCPA in order to allege a violation of the Rosenthal Act. Section 1692f of the FDCPA prohibits a debt

collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692(f). "The collection of any amount (including any interest, fee, charge or expense incidental to the principal obligation) unless any such amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation of § 1692f(1). "[W]here parties have not expressly agreed on charges to be collected with respect to a debt, state law determines whether additional charges are permitted." *Riding v. CACH LLC,* 992 F. Supp. 2d 987, 997-98 (C.D. Cal. 2014) (citing *Palmer v. Stassinos,* 348 F. Supp. 2d 1070, 1076 (N.D. Cal. 2004)).

In this case, when Plaintiff voluntarily chose to make a payment by telephone rather than by other, cost-free methods, she entered into a separate agreement with Defendant -- she would be permitted to pay by telephone, with all of the ease and immediacy that method of payment offered, rather than by other cost-free methods, in return for $2.00. Under the FDCPA, such fees are only unlawful if a court determines the fee to be "incidental to the principal obligation." *See, e.g., Hunt v. Check Recovery Sys., Inc.,* 478 F. Supp. 2d 1157, 1169 (N.D. Cal. 2007); *Newman v. Checkrite California, Inc.,* 912 F. Supp. 1354 (E.D. Cal. 1995); *Clark v. Bonded Adjustment, Co.,* 176 F. Supp. 2d 1062, 1064 (E.D. Wash. 2001). However, a court in this District has concluded that a convenience fee similar to the one at issue in this case is *not* incidental to the principal obligation, and, thus, not a violation of the FDCPA. *Flores v. Collection Consultants of Calif.,* 2015 WL 4254032, *10 (C.D. Cal. Mar. 20, 2015). In *Flores*, the court concluded that its decision was supported by the legislative intent of the statute:

> This conclusion is in line with the intentions of the statute. Section 1692f seeks to prevent unfair or unconscionable methods of collecting debt. Plaintiff has made no argument that this practice was inherently unfair or unconscionable. Indeed he conceded that "Defendant could have easily avoided the current lawsuit by refusing to accept credit cards as a payment method which would have permitted Defendant to comply with both Federal and California law." Opp'n at 16. Discouraging debt collectors from offering the additional method of payment does not further the purposes of the FDCPA, and it would seem unfair or

inconvenient to many debtors to be deprived of the opportunity to pay by credit card as a result of a ban on an opt-in fee to cover costs.

*Flores,* 2015 WL 4254032 at 10.  Similarly, in this case, Defendant simply offered Plaintiff the *option* to pay by telephone for a fee and Plaintiff opted to take advantage of the optional convenience and incur the charge for doing so.  Defendant did not require or force Plaintiff to make her mortgage payment by telephone and she was never told that she could not use any of the other payment options that did not include a fee.

Accordingly, Plaintiff's first count for violation of the Rosenthal Act is dismissed.

### C. Plaintiff Failed to State a Claim for Violation of the UCL.

Even assuming *arguendo* that Plaintiff was entitled to assert a UCL claim against Defendant despite Plaintiff not being a resident of California, Plaintiff's second count for violation of the UCL is also subject to dismissal under Rule 12(b)(6) because it fails to state a cause of action.  Plaintiff's UCL claim is derivative of her claim that Defendant violated the Rosenthal Act and the FDCPA.  FAC, ¶ 98.  However, because Plaintiff has failed to state a claim under either the Rosenthal Act or the FDCPA, the UCL claim also fails.  *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1366 (2010) (holding that no UCL claim because the pleading "does not allege the conduct is tethered to any underlying constitutional, statutory, or regulatory provision…"); *see also Krantz v. BT Visual Images, L.L.C.*, 89 Cal.App.4th 164, 178 (2001) (holding that the viability of a UCL claim "stand[s] or fall[s] with the antecedent substantive causes of action."); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1190-91  (N.D. Cal. 2009) ("[S]ince the Court has dismissed all of the Plaintiffs' predicate violations, Plaintiff cannot state a claim under the unlawful business practice prong of the UCL.").

Accordingly, Plaintiff's second count for violation of the UCL is dismissed.

### D. Plaintiff Failed to State a Claim for Violation of the FCCPA.

In her third count, Plaintiff alleges that Defendant violated the FCCPA by charging and collecting the convenience fees at issue. Under the FCCPA, it is unlawful to "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9). The FCCPA does not expressly prohibit a debt collector from charging fees for optional convenience services. *See* Fla. Stat. § 559.72(9). Thus, the convenience fees at issue violate the FCCPA only if Defendant is a debt collector improperly seeking to enforce a debt due another when that right does not exist. *See Bardak v. Ocwen Loan Servicing, LLC*, 8:19-CV-1111-24TGW, 2020 WL 5104523, at *4 (M.D. Fla. Aug. 12, 2020) ("The convenience fees at issue are not a debt owed by another. Even if they were a debt, Ocwen is not a debt collector—the debt was not in default, it originated with Ocwen, and it was not 'due another.' Thus, Plaintiff's claims are not actionable under either the FDCPA or the FCCPA and the Motion to Dismiss is due to be granted"). The FCCPA defines a "debt collector" as "any person who uses any instrumentality of commerce within this state, whether initiated from, within or outside this state, in any business the principal purpose of which is collector of debts, or who regularly collects or attempts to collect, directly or indirectly, **debts owed or due or asserted to be owed or due another.**" Fla. Stat. § 559.55(7) (emphasis added). In addition, the FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. §559.55(6).

The issue of convenience fees being collected in order to make a payment online or by telephone has been "heavily litigated in federal courts in both the Middle and Southern Districts of Florida" (*Kelly v. Ocwen Loan Servicing, LLC*, 2020 WL 4428470, at *2 (M.D. Fla. July 31, 2020)), and courts in both districts have reached the conclusion that convenience fees for telephonic or online mortgage payments are not unlawful under either the FDCPA or FCCPA because the convenience fees are not a debt being collected by a debt collector. *Lang v. Ocwen Loan Servicing*, 2020 WL 5104522, at *3 (M.D. Fla. July 17, 2020) ("Speedpay is a convenience fee and is not a debt owned by another. Even if the Speedpay fee was a debt, Ocwen is not a debt collector—the debt was not in default, it originated with Ocwen, and it was not 'due another.' In total, Plaintiff's claims are not actionable under either the FDCPA or FCCPA."); *Turner v. PHH Mortgage Corp.*, 2020 WL 2517927, at *3 (M.D. Fla. Feb. 24, 2020) ("So because the Court concludes PHH was collecting a fee for a separate, optional service, that the fee for such service originated with PHH, and that Turner was not in default when PHH collected the fee for the service, PHH is not a 'debt collector' under the FDCPA or FCCPA. The Court, therefore, must dismiss this action with prejudice."); *Estate of Campbell v. Ocwen Loan Servicing, LLC*, 2020 WL 5104538, at *2 (S.D. Fla. Apr. 30, 2020) ("The Court is most persuaded by Judge Moody's well-reasoned, commonsense approach and analysis in *Turner v. Ocwen Loan Servicing, LLC*, 2020 WL 2517927 (M.D. Fla. Feb. 24, 2020).").

Therefore, in this case, Plaintiff cannot maintain an FCCPA claim against Defendant because Defendant is not a debt collector with respect to the convenience fees and the convenience fees themselves do not constitute a debt under the FCCPA. *Estate of Campbell v. Ocwen Loan Servicing, LLC*, 2020 WL 5104538, at *2 ("Is the 'convenience fee' part of the debt Defendant sought to collect? **The answer is no**") (emphasis added). Although Defendant may be considered a debt collector under the FCCPA with regard to the underlying debt owed by Plaintiff, the convenience fees –

fees only collected by and paid Defendant at the time of a telephonic payment – are not part of or included in the underlying debt.

In addition, the convenience fees are not an amount "due or owed to another." *Turner,* 2020 WL 2517927, at *2; *see also Buckman v. Am. Bankers Ins. Co. of Fla.*, 115 F.3d 892, 895 (11th Cir. 1997) (concluding bail bondsman was not a "debt collector" because debt originated with bondsman); *Helman v. Bank of Am.*, 685 F. App'x 723, 726 (11th Cir. 2017) (concluding original mortgagee is not subject to FDCPA because it originated the loan). The convenience fee is not referenced in Plaintiff's loan documents and is only collected by and paid to Defendant at the time of a telephonic payment. FAC, ¶ 3 and Exh. A. Moreover, the convenience fees do not qualify as "debt." An optional fee for an optional service, a service not required by the underlying loan documents, is not a "debt" that Plaintiff is obligated to pay under the FCCPA. *Turner,* 2020 WL 2517927 at *2 ("Turner used PHH's optional Speedpay service to ensure same-day posting and processing of her mortgage payments. This optional service had a separate fee that originated with PHH—not Turner's mortgagee. And when Turner became obligated to pay the convenience fee, Turner was not in default in her obligation to pay it. So PHH was not operating as a debt collector under the FDCPA or FCCPA when it collected the convenience fee in exchange for its Speedpay service."). Just like the plaintiff in *Turner*, Plaintiff was not required to make her mortgage payment by telephone and could simply have avoided paying a fee by making her payment by other means. The convenience fee was only applied so that Plaintiff could assure a same-day payment by telephone and avoid incurring late fees.[1]

Accordingly, Plaintiff's third count for violation of the FCCPA is dismissed.

---

[1] Plaintiff's First Amended Complaint explains that her mortgage requires payments on the 1st of each month and assesses late charges if the payment is not received during a 15-day grace period (Am. Compl., ¶ 56) and that each time she incurred a $2.00 fee she was making a payment at or near the end of the grace period (Am. Compl., ¶ 58).

E.    **Plaintiff fails to state a cause of action under FDUTPA.**

In her fourth count, Plaintiff alleges that Defendant violated the FDUTPA by charging and collecting the convenience fees at issue.

The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). An unfair practice has been defined as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. 4th DCA 2001) (quotation omitted). Deceptive and unfair practices also include violations of "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c).

Plaintiff cannot state a claim under the FDUTPA because the conduct she complains of does not constitute "trade or commerce" under the statute. *See e.g., State Office of Att'y Gen. v. Shapiro v. Fishman, LLP,* 59 So. 3d 353, 355-357 (Fla. 4th DCA 2011) (holding that debt collection does not constitute "trade or commerce" under the FDUTPA); *Benjamin v. CitiMortgage, Inc.*, Case No. 12–62291–CIV, 2013 WL 1891284, *5 (S.D. Fla. May 6, 2013) (holding that loan servicing does not constitute "trade or commerce" under the FDUTPA).

In addition, even if Defendant's conduct did constitute "trade or commerce," Plaintiff has failed to allege any unfair or deceptive conduct on the part of Defendant. There is nothing inherently unfair or unconscionable about the convenience fees charged by Defendant. Instead, Defendant offers such services, for a fee, as a convenience to its customers who voluntarily choose to avail themselves of their benefit. Many borrowers benefit from using Defendant's phone payment services as they are able to avoid incurring larger late fees for making payments outside of the

mailing window. Indeed, the Eleventh Circuit held that a similar convenience fee charged by a bank did not violate the FDUTPA:

> Baptista requested to have the check cashed immediately upon presentment to Chase, and in return, Chase requested a $6.00 fee. Baptista agreed to the fee. If Baptista had chosen to deposit the check in her own account and wait for processing, no fee would have been levied. The fee was only levied because Chase conferred an additional benefit on Baptista, that is, immediate payment of the check.

*Baptista v. JPMorgan Chase Bank, N.A.* 640 F.3d 1194, 1198 (11th Cir. 2011). In addition, other courts interpreting statutes similar to FDUTPA have concluded that convenience fees for phone payments do not violate those statutes. *See, e.g., Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 3d 676, 685 (E.D.N.C. 2019) ("U.S. Bank's practice of charging customers a fee for paying by phone is not unfair or deceptive under the [North Carolina] UDTPA. U.S. Bank's fee for an optional service that Waddell chose for her convenience is not plausibly deceptive (*i.e.*, capable of or tending to deceive) or unfair (*i.e.*, immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers)").

In this case, like the plaintiffs in *Baptista* and *Waddell*, Plaintiff requested to use Defendant's optional phone payment system to pay her mortgage and have her payment applied immediately, and in return, Defendant requested a $2.00 fee. FAC, ¶¶ 57-58. The Court concludes that this arrangement was neither unfair nor deceptive and, thus, did not violate the FDUTPA.

Accordingly, Plaintiff's fourth count for violation of FDUTPA is dismissed.

### F. Plaintiff Failed to State a Claim for Breach of Contract.

In her fifth count, Plaintiff alleges that Defendant breach Paragraphs 9, 14, and 16 of the Mortgage by charging convenience fees. FAC, ¶¶ 122-133. Plaintiff also alleges that Defendant breached the Mortgage by violating the FCCPA and the Rosenthal Act. FAC, ¶¶ 131-132.

In order to state a claim for breach of contract claim under Florida law,[2] a plaintiff must allege the existence of a contract, a breach of the contract, and damages resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009); *Bray & Gillespie Management LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355 (M.D. Fla. 2007). When interpreting a contract under Florida law, clear and unambiguous terms must be given their plain and ordinary meaning. *Pol v. Pol,* 705 So.2d 51, 53 (Fla. 3d DCA 1997). "'[T]he actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls.'" *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So.2d 1000, 1003 (Fla. 2d DCA 1995) (citation omitted). The court looks to the "four corners of the instrument to determine the intent of the parties." *Leverso v. SouthTrust Bank of AL., Nat. Assoc.,* 18 F.3d 1527, 1534 (11th Cir. 1994). Indeed, "[i]t is well settled that a court cannot rewrite the terms of a contract in an attempt to make otherwise valid contract terms more reasonable for a party or to fix an apparent improvident bargain." *Id.* In addition, under Florida law, where a contract is silent as to a particular matter, "that is, its language neither expressly nor by reasonable implication indicates that the parties intended to contract with respect to the matter, the court should not, under the guise of construction, impose contractual rights and duties on the parties which they themselves omitted." *Gulf Cities Gas Corporation v. Tangelo Park Service Company*, 253 So.2d 744, 748 (Fla. 4th DCA 1971); *accord Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1345 (S.D. FL. Jan. 13, 2011) ("Countrywide had no contractual obligation to restructure or modify Silver's loan. Nor does Silver allege such an express contractual provision. Thus, there was no breach of contract based on these events.").

---

[2] Plaintiff's Florida Mortgage is governed by Florida law. FAC, Exh. A at ¶ 16 ("This Security Instrument shall be governed by federal law and the law of jurisdiction in which the Property is located").

Alternatively, Plaintiff must allege that there has been an *express* violation of an applicable law in order to state a cause of action for breach of contract.[3] *See, Torliatt v. Ocwen Loan Servicing, LLC,* 2020 WL 1904596, at *5 (N.D. Cal. Apr. 17, 2020) ("Torliatt has not adequately alleged that PHH has violated a provision expressly prohibited by "Applicable Law" such that it is in breach of the Deed of Trust. He takes the position that, if he can adequately allege that PHH violated any law, he may allege a breach of contract. But the Deed of Trust describes only fees that are "expressly prohibited." As discussed above, it is not entirely settled whether convenience fees violate the FDCPA or the Rosenthal Act. At a minimum, Torliatt has not shown that the convenience fees are "expressly prohibited" by these statutes. Accordingly, his breach of contract claim is dismissed").

In this case, Plaintiff's Mortgage does not dictate *how* Plaintiff is to make her mortgage payments and it does not specify what (if any) fees can or cannot be charged for providing telephonic payment services. Thus, the Mortgage simply does not prohibit Defendant from charging a fee for telephonic payments. To the contrary, the Mortgage specifically state that the failure to include a specific fee "shall not be construed as a prohibition of the charging of such fee." FAC, Exh. A at ¶ 14. Therefore, payment methods and fees for telephonic payments are not part of the contract formed by the Mortgage. Although Plaintiff specifically alleges that Defendant's convenience fee violates paragraph 9, 14, and 16 of the Mortgage, none of those paragraph address convenience fees. For example, paragraph 16 is simply the Mortgage's choice of law provision (FAC, Exh. A at ¶ 16) and does not address or prohibit convenience fees. Paragraph 9 concerns the rights and obligations of the lender to secure and protect its mortgage interest in Plaintiff's property in certain situations, such as a default on the mortgage or the abandonment of the property (*Id.*

---

[3] Plaintiff has failed to allege a claim for violation of the FDCPA, the Rosenthal Act, the UCL, the FCCPA, or the FDUTPA and, thus, cannot maintain a claim for breach of contract based on any express violation of law.

at ¶ 9) and does not address or prohibit convenience fees.  Finally, Paragraph 14 allows the lender to charge Plaintiff fees in the event of her default in order to protect its security interest in the property but does not prohibit a lender or its servicer's ability to charge *other* fees for *other* reasons.  *Id.* at ¶ 14.  Although Paragraph 14 also indicates that a lender may not charge "interest or other loan charges" that exceed "permitted limits" (*id.*), convenience fees are not "interest or other loan charges." Instead, they are an entirely separate charge incurred for providing an entirely separate service.  *See, Meintzinger* 2019 WL 1471338 at *2 ("Nothing in the FDCPA requires the collection company to accept payments by telephone, and thus nothing prohibits it from offering to enter into a new contract with the debtor, *i.e.*, 'for $ 6, I will give you the added convenience of paying by phone'").

## IV.  CONCLUSION

For all the foregoing reasons, Defendant's Motion is **GRANTED**.  Plaintiff's First Amended Complaint is **DISMISSED without leave to amend**, and this action is **DISMISSED with prejudice**.[4]

**IT IS SO ORDERED.**

Dated:  November 10, 2020

Honorable John F. Walter
United States District Judge

---

[4] Although the Court recognizes that this Circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile").  In this case, Plaintiff has had two attempts to allege these claims. In addition, Plaintiff has failed to indicate in her Opposition what additional facts she could allege in order to state a viable claim against Defendant.  Moreover, in light of the fact that various courts have rejected the same or similar claims as those alleged by Plaintiff that were based on similar convenience claims, Plaintiffs claims cannot be saved by simply alleging new or additional facts.